IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS A. MURRAY,
NANCY R. MURRAY, and
DEBORAH JACKSON,

    Plaintiffs,

v.

HOUSEHOLD BANK (SB), N.A.;
HOUSEHOLD CREDIT SERVICES, INC.;
HOUSEHOLD CREDIT SERVICES (II), INC.;
and HSBC NORTH AMERICA HOLDINGS, INC.,

    Defendants.

No. 05 C 1227

Judge Robert W. Gettleman

## MEMORANDUM OPINION AND ORDER

Plaintiffs Thomas A. Murray, Nancy R. Murray, and Deborah Jackson filed a six-count putative class action[1] alleging that defendants Household Bank (SB), N.A., Household Credit Services, Inc., Household Credit Services (II), Inc., and HSBC North America Holdings, Inc. failed to comply with the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. On June 7, 2005[2], defendants filed a renewed motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). On August 24, 2005, the court granted defendants' motion for leave to cite additional authority. On September 1, 2005, the court granted plaintiffs' motion for leave to file instanter a response to defendants' supplemental authority.

---

[1] The court notes that the caption fails to state that the action is brought as a class action.

[2] With leave of the court, defendants filed a corrected memorandum of law in support of their motion on June 20, 2005.

## FACTS

Plaintiffs are individuals who reside in the Northern District of Illinois. Defendant Household Bank (SB), N.A. is a bank with offices in Las Vegas, Nevada and does business in Illinois. Defendants Household Credit Services, Inc. and Household Credit Services (II), Inc. are corporations with offices in Prospect Heights, Illinois. HSBC North America Holdings, Inc. is a Delaware corporation with offices in Prospect Heights, Illinois.

Defendants sent plaintiffs seven "prescreened" mailings offering pre-approved MasterCard credit cards to be issued by Household Bank (SB), N.A. and serviced by one of the two Household Credit Services entities. The mailings were sent by HSBC North America subsequent to February 15, 2004. Each mailing contains an FCRA disclosure statement that the "information contained in your credit report was obtained from a credit reporting agency and was used in connection with selecting you for this offer." In six of the seven mailings, the FCRA disclosure was contained in a black-and-white insert that stated that it contained rates, fees, and contract terms. The front of the solicitation letter and another insert displaying credit card designs were in color. In the seventh mailing, the FCRA disclosure was on the reverse of the solicitation letter, and appeared under the heading "Additional Terms and Conditions." Nothing in the mailings alerts the reader to that fact that the disclosure information also applies to consumers who do not want the credit offer.

## DISCUSSION

A party is permitted under Federal Rule of Civil Procedure 12(c) to move for judgment on the pleadings after the parties have the complaint and the answer. Fed. R. Civ. P. 12(c); Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir.

2

1998). A motion for judgment on the pleadings "under Rule 12(c) is reviewed under the same standard as a motion to dismiss under 12(b): the motion is not granted unless it appears beyond doubt that the plaintiff can prove no facts sufficient to support his claim for relief, and the facts in the complaint are viewed in the light most favorable to the non-moving party." Flenner v. Sheahan, 107 F.3d 459, 461 (7th Cir. 1997). The court, in ruling on a motion for judgment on the pleadings, must "accept as true all well-pleaded allegations." Forseth v. Village of Sussex, 199 F.3d 363, 364 (7th Cir. 2000). A court may rule on a judgment on the pleadings under Rule 12(c) based upon a review of the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits. Id. at 452-53.

I.    **Firm offer of credit**

Plaintiffs argue that defendants violated § 1681b of the FCRA because the credit mailings were not firm offers of credit and thus defendants did not have a permissible purpose for accessing plaintiffs' consumer reports. The FCRA protects the privacy of consumer reports obtained from consumer reporting agencies. See 15 U.S.C. §1681(a). Under § 1681b of the FCRA, it is permissible to obtain a consumer report only with the written consent of the consumer or for certain "permissible purposes," such as the extension of a firm offer of credit. 15 U.S.C. § 1681b(c)(1)(B). Persons who use a consumer report to make a prescreened offer are required under § 1681m(d) to make certain disclosures in a "clear and conspicuous" manner. For example, users must state that "information contained in the consumer's consumer report was used in connection with the transaction" and that the consumer has a right to prohibit the information in his consumer report from being used "in connection with any credit or insurance transaction that is not initiated by the consumer." 15 U.S.C. § 1681m(d)(1).

3

In the instant case, plaintiffs did not authorize access to their consumer reports or initiate any transactions with defendants. Defendants' prescreened credit card offers were thus permissible only if they fell under the firm offer of credit extension in § 1681b(c)(1)(B). Plaintiffs argue that the disclosures contained in defendants' credit offers did not comply with 15 U.S.C. § 1681m(d), which requires users making unsolicited offers of credit to provide "clear and conspicuous" disclosures regarding removing a consumer's name from consumer reporting agency lists, and thus the solicitations were not firm offers of credit. In particular, plaintiffs assert that the location and format of the disclosures were such that consumers who did not accept the credit card offer were unlikely to review them. According to plaintiffs, because the absence of an election by the consumer to have his name and address excluded from lists of names and addresses provided by consumer reporting agencies is a prerequisite of a firm offer of credit, 15 U.S.C. § 1681b(c)(1)(B)(iii), the failure to provide notice that such an election may be made precludes a solicitation from being a firm offer of credit.

Plaintiffs cite no case law supporting their novel, and ultimately unpersuasive, reading of the statute. The definition of a "firm offer of credit," contained in §§ 1681a(l) and 1681b(c)(1)(B), does not include a requirement to give any disclosures. The disclosures described in § 1681m(d) are a separate and subsequent requirement, implicated only when a firm offer of credit is made, and the failure to provide these disclosures does not strip a solicitation of its status as a firm offer of credit. The Seventh Circuit recently recognized this distinction in Cole v. U.S. Capital, Inc., 389 F.3d 719, 729 n. 11 (7th Cir. 2004), noting that "[t]he requirements of clear and conspicuous disclosures are only triggered if a valid firm offer was extended... . Consequently, if a solicitation is not provided pursuant to § 1681b(c)(1)(B), i.e., it is not a firm

offer of credit, § 1681m(d) is not applicable." Id. A violation of § 1681m, therefore, does not nullify a firm offer of credit and does not create a separate violation of § 1681b.

Plaintiffs' only basis for their argument that defendants' mailings were not firm offers of credit and thus not permissible under § 1681b is their contention that insufficient § 1681m disclosures effectively invalidate a firm offer. Plaintiffs do not, for example, allege that the creditors will not honor the offers or that the credit offered is of no value to the consumers. See Cole, 389 F.3d at 726-728 (discussing definition of firm offer of credit). Accordingly, plaintiffs have failed to allege that defendants mailings were not firm offers of credit.

## II. Private right of action under § 1681m

Plaintiffs also argue that defendants are liable under § 1681m of the FCRA because the prescreened disclosures provided in the mailings were insufficient. Defendants argue that recent amendments to the FCRA eliminated a private right of action for a violation of § 1681m.

The Fair and Accurate Credit Reporting Act of 2003, P.L. 108-159 ("FACT Act"), amending the FCRA, became effective on December 1, 2004. Section 311(a) of the FACT Act added § 1681m(h), which concerns the use of consumer reports to offer credit to certain consumers on terms that are "materially less favorable than the most favorable terms available to a substantial proportion of consumers." 15 U.S.C. § 1681m(h)(1). Section 1681m(h)(8), titled "Enforcement," provides: "(A) No Civil actions. Sections 1681n and 1681o[3] of this title shall not apply to any failure by any person to comply with this section. (B) Administrative

---

[3] 15 U.S.C. §§ 1681n and 1681o provide civil liability for "willful noncompliance" and "negligent noncompliance" with the FCRA, respectively.

enforcement. This section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section."

Judge Zagel recently dismissed a similar FCRA case (filed by the same plaintiffs as in the instant case), Murray v. Cross County Bank, no. 05 C 1252, unpub. order (N.D.Ill. Aug. 15, 2005), based on his finding that there was no private right of action under § 1681m. Judge Zagel rejected the plaintiffs' argument (made in the instant case as well) that § 1681m(h)(8) eliminated a private right of action only as to § 1681(h), and held that Congress's use of the word "section" in § 1681m(h)(8) referred to § 1681m as a whole, rather than subsection (h) only. The parties in the instant case do not cite, and the court has not found, any circuit court decision that has addressed this particular issue of statutory construction. For the reasons set forth below, this court, like Judge Zagel, concludes that § 1681m(h)(8) precludes all private rights of action under § 1681m.

"Congress ordinarily adheres to a hierarchical scheme in subdividing statutory sections," and the Senate and House manuals each provide that sections are to be divided in descending order into subsections, paragraphs, subparagraphs, and clauses. Koons Buick Pontiac GMC, Inc. v. Nigh, 125 S.Ct. 460, 467 (2004). Within § 1681m(h), the FCRA refers to 1681n, 1681o, and 1681s as "sections," indicating that a section is demarcated by the first letter after the number. Section 1681m(h)(4) uses "subsection (a)" to refer to § 1681m(a), indicating that a subsection is demarcated by the second letter in parenthesis.[4] The proper use of both terms within § 1681m(h)

---

[4]Other subsections of § 1681m appear to use "section" more generally. For example, § 1681m(b)(2)(B) refers to "section 1681a(k)(1)(A)." (See also, §§ 1681m(d)(1) and 1681m(h)(5)(D)). In these instances, however, the word "section" appears immediately adjacent to the number and is clearly intended to replace the "§" symbol, which is typically used to denote that it precedes a citation to a statute. Thus, the word "section" in these parts of the statute,

demonstrates that Congress, recognizing their different meanings, presumably understood how to limit the enforcement provision to the subsection. See Duncan v. Walker, 533 U.S. 167, 173 (2001) ("it is generally presumed that Congress acts intentionally and purposefully" in using particular statutory language"); see also Nestle Holdings, Inc. v. Central States, Southeast & Southwest Areas Pension Fund, 342 F.3d 801, 804 (7th Cir. 2003) ("The basic rule in statutory interpretation is that plain statutory language governs."). On its face, § 1681m(h)(8) eliminates a private right of action for the entire section, § 1681m.

The court agrees with plaintiffs that § 1681m is not a model of precise draftsmanship. For example, it would have been more logical to add the enforcement provision in a separate subsection, § 1681m(i), rather than including it as a paragraph of subsection § 1681m(h). In addition, the court agrees with plaintiff that § 1681m(h)(7) is redundant of § 1681m(c) because both provide that there is no liability for a violation of § 1681m if "reasonable policies and procedures to comply with this section" are maintained. See Witzke v. Femal, 376 F.3d 744, 753 (7th Cir. 2004) ("We must read a statute to give effect to each word so as to avoid rendering any words meaningless, redundant, or superfluous."). Even under plaintiffs' construction of the statute, however, which presumes that Congress intended to limit § 1681m(h)(7) to subsection (h), § 1681m(h)(7) is redundant because § 1681m(c) already applies the "reasonable procedures" defense to all of § 1681m, including § 1681m(h).

Plaintiffs cite extensively to the legislative history of the FACT Act, which reveals an absence of discussion regarding the elimination of a private right of action under § 1681m as a whole, in support of their argument that the enforcement provision applies to subsection (h) only.

---

unlike § 1681m(h)(8), do not indicate the precise hierarchical ranking of the provision cited.

7

None of the drafting choices identified by plaintiffs, however, rise to the level of a textual ambiguity or anomaly that would require, or even permit, the court to resort to legislative history. As the Supreme Court noted last term in Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S.Ct 2611, 2624 (2005), a statute may contain an unintentional drafting error, but "it is up to Congress rather than the courts to fix it." 125 S.Ct. at 2624; see also Lamie v. United States Trustee, 540 U.S. 526, 542 (2004) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform to its intent. It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result.") (internal quotation marks and alteration omitted).

The court understands plaintiffs' frustration that reading § 1681m(h)(8) as written eliminates a substantial private cause of action under a statute that was enacted to protect private consumers. See 15 U.S.C. § 1681(a)(4) ("There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."). Courts, however, may not create a private right of action or private remedy, "no matter how desirable that might be as a policy matter, or how compatible with the statute." Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001).

It certainly would not have been unreasonable for Congress to debate, or at least mention, such a sweeping change in enforcement of a section of the FCRA before passing the FACT Act. Plaintiffs' argument that the lack of discussion in the legislative history evidences a lack of congressional intent, however, is mooted by Exxon Mobil. Decided after Koons, Exxon Mobil holds that a court may not consider legislative history when, as here, the text of a statute is unambiguous. 125 S.Ct. at 2626. Exxon Mobil addressed a conflict between unambiguous

statutory language of 28 U.S.C. § 1367(a) and an unambiguous statement of congressional intent, and held that the statute's text controlled entirely. Id. at 2626 ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material"); see also Jacobs v. Bremner, 378 F. Supp. 2d 861, 866 (N.D.Ill. 2005) ("In short, Exxon Mobil declares that it is impermissible to consult legislative history when the statutory language is unambiguous.").

In the instant case, the legislative history appears silent regarding the continuing viability of a private right of action under § 1681m, rather than in express conflict with the statutory language, as in Exxon Mobil. 125 S.Ct. at 2630 (Stevens, J., dissenting) (Congress directly anticipated the issues raised and left a "virtual billboard of congressional intent" as to how that question should be resolved."). Under Exxon Mobil, which bars resort to legislative history to alter the "plain terms" of a statute, it would be improper to consider legislative history here because plaintiffs have failed to point to any textual ambiguity in § 1681m(h)(8) and the court cannot identify any. Jacobs, 378 F. Supp. at *5.

Plaintiffs' citation to Koons, a Truth in Lending Act case in which the Court gave effect to congressional intent, is thus largely inapposite because the examination of legislative history in Koons was premised on the Court's finding that the statutory text created an "anomalous" result. The Koons court noted that the reading suggested by the defendant, "would lead to the anomalous result of double-the-finance-charge liability, uncapped by the fixed dollar limit...for an open-end loan secured by real property, while liability would be capped...at $2,000 for a closed-end loan secured by the same real property." 125 S.Ct. at 469, n.10. Plaintiffs' citation to United States v. Turcotte, 405 F.3d 515, 522 (7th Cir. 2005), in which the Seventh Circuit

9

examined the statutory history of the Controlled Substance Analogue Act ("CSAA") to determine whether a portion of the statute should be read conjunctively or disjunctively, is equally inapposite here because, unlike the clauses at issue in Turcotte, the text of § 1681m(h)(8) is not susceptible to two different readings. In addition, the results of the plain language of the FCRA enforcement provision may be considered improvident or unfair by some, but they are not absurd. Cf. Id. at 522-23 (noting that a disjunctive reading of the CSAA would criminalizes benign substances such as sugar and flour if the seller represents that they are banned substances or have physiological effects similar to illegal drugs); see also Exxon Mobil, 125 S.Ct at 2624 ("The omission may seem odd, but it is not absurd.").

The plain language of § 1681m(h)(8), regardless of whether Congress gave scant consideration to its effect, is neither internally inconsistent nor unclear, and it does not produce an anomalous or nonsensical result. On its face, it eliminates all private rights of action under that section of the FCRA, § 1681m, and this court may not consult the legislative history or other extrinsic sources.

Accordingly, the court grants defendants' motion for judgment on the pleadings. Because the court grants defendants' motion, it need not consider defendants' alternative arguments in support of judgment in their favor.

## CONCLUSION

For the reasons stated above, the court grants defendants' motion for judgment on the pleadings.


ENTER: September 12, 2005

                                                  **Robert W. Gettleman**
                                                  **United States District Judge**